STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2005 MAY 31 P 3: 41

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-62

ROBERT SMITH,

Petitioner

v.

DECISION AND ORDER

SOUTHERN MAINE
COMMUNITY COLLEGE, ET AL.,

JUL 15 2005

JUN 15 2005

Respondents

This matter is before the court on the 80B petition of Robert Smith for judicial review of his termination from employment by the respondent Southern Maine Community College (SMCC). M.R. Civ. P. 80B.

## BACKGROUND

Since the Fall of 1998, the petitioner has been periodically hired by SMCC to teach as an adjunct instructor.[1] In September 2003, he began teaching a Psychology course at the college, but he did not have a written employment agreement.

On September 4 and 5, 2003, SMCC interviewed students in response to complaints about the petitioner's teaching and his classroom presentation of two

---

[1] The record discloses that he was hired for the Fall of 1998, the Spring of 2001, the Spring of 2002, and the Fall of 2002. (Rec. Tab # 2). The petitioner and SMCC entered into a written Employment Agreement for each of those periods. *Id.*

1

video clips to students. One depicted World War II killings. The other, characterized by some students as "pornography", depicted consensual sexual activity between two men. Notes of those interviews are included in the Record submitted by the petitioner. (*See* Rec. Tab # 7). Subsequent to those interviews, the petitioner met with the respondent Janet Sortor, who was the Dean of Academic Affairs. The scope of this meeting is in dispute and, particularly, whether it constituted a "hearing" for the purposes of due process. Following that meeting, the petitioner's employment was terminated by SMCC.

On September 29, 2003, the petitioner wrote to Sortor, requesting that the reasons for his termination be set forth in writing. (Rec. Tab # 9). In response, SMCC's General Counsel Derek Langhauser sent a letter to the petitioner, dated October 23, 2003, enumerating a number of grounds for the petitioner's dismissal, including the teaching method and course material used by the petitioner in his September 5, 2003 class. (Rec. Tab # 9). Other grounds for dismissal recited by Langhauser included the petitioner's "fail[ure] to teach the course's standard curriculum and [his statement] that he did not intend to do so", his failure "to provide a timely course syllabus," and his failure "to teach the assigned subject matter in a manner consistent with recognized academic and professional standards and practices." (*Id.*). The petitioner was given "the opportunity to present his side", but did not deny the students' accounts. (Rec. Tab # 9).

2

The petitioner filed an 80B petition, since amended, seeking review of the decision to terminate his employment.[2] In conjunction with that filing, he also submitted a record of the proceedings being reviewed: SMCC's prior Employment Agreements with the petitioner; SMCC's Course Catalog for 2003-2004, with a description of the petitioner's psychology course; SMCC's Fall 2003 Faculty Resource Handbook; a quiz that the petitioner gave to students; SMCC's notes from interviews with students regarding the petitioner; the payment schedule for the petitioner's Fall 2003 contract and a check for the first payment; and correspondence between the petitioner and SMCC.[3] M.R. Civ. P. 80B(e).

In sum, the petitioner alleges that SMCC summarily terminated his employment as an Adjunct Professor of Psychology in violation of his rights of free speech and due process under the constitutions of the United States and the State of Maine.

## DISCUSSION

In an 80B appeal, the court reviews a governmental decision for errors of law, abuse of discretion or findings of fact unsupported by the record. *Yates v. Town of Southwest Harbor,* 2001 ME 2, P10, 763 A.2d 1168. When "reviewing an

---

[2] Additionally, the petitioner sought to join other independent causes of action. This court denied the petitioner's motion for joinder in its Order dated January 31, 2005.

[3] In its Order dated January 31, 2005, the court granted SMCC's motion to strike from the record (i) the petitioner's affidavit and (ii) the textbook, MORRIS & MAISTO, UNDERSTANDING PSYCHOLOGY (6th ed. 2003).

administrative agency decision, the issue before the court is not whether it would have reached the same conclusion as the agency, 'but whether the record contains competent and substantial evidence that supports the result reached.'" *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551, 555 (quoting *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261).

A.    Free Speech

The petitioner contends that his termination by SMCC was a violation of his right to engage in constitutionally protected speech within the meaning of the First Amendment to the United States Constitution and Article I, section 4 of the Maine Constitution. In order to prove a violation, the petitioner "must show that (1) his classroom speech was constitutionally protected and (2) the speech was a motivating factor in the decision" to fire him. *Silva v. Univ. of New Hampshire*, 888 F. Supp. 293, 312 (D. NH 1994) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 174, 187 (1977)).

This court is mindful of the vital importance of open communication in educational settings and "the proposition that teachers retain their First Amendment right to free speech in school," *Ward v. Hickey*, 996 F.2d 448, 452 (1st Cir. 1993) (citing *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503 506 (1969), while recognizing "that public schools may limit classroom speech to promote educational goals." *Id.* Given these competing interests and

4

applicable First Amendment precedent, a court may uphold a school's regulation of a "teacher's classroom speech if: (1) the regulation is reasonably related to a legitimate pedagogical concern, and 2) the school provided the teacher with notice of what conduct was prohibited." *Id.* "The relevant inquiry is: based on existing regulations, policies, discussions, and other forms of communication between school administration and teachers, was it reasonable to expect the teacher to know that his conduct was prohibited." *Silva*, 888 F. Supp. at 312 (internal citations omitted).

In the instant case, the court concludes that the petitioner had sufficient notice of prohibited teaching methods by virtue of SMCC's sexual harassment policy (the policy) included in the *Faculty Resource Handbook*. (Rec. Tab # 4). The policy reads in relevant part:

> SMCC has an obligation to its students and employees to maintain a working and learning environment free from sexual harassment or harassment of any kind. . . . The existence of such harassment is counter to College policy and is illegal and subject to disciplinary action, up to and including dismissal.

*Id.*

"Examples of Sexual Harassment" under the policy include "[s]lurs, jokes, or degrading comments of a sexual nature, [and] the display of sexually suggestive pictures or objects." *Id.* The policy also provides that "each employee will be held

personally responsible for compliance with these policies. Prompt and remedial action will be taken upon discovery of harassment." *Id.*

The court also concludes that the undisputed conduct by the petitioner was proscribed by SMCC's policy and that it is reasonable to expect that he had notice of the prohibition. *See* R. Tab 7 (SMCC's notes of students' accounts of the petitioner's conduct in class, together with his remarks that the purpose of his conduct was "to weed people out" of the class and that, if students "want a class that goes by the book, this is not the class").

Finally, the court concludes that SMCC's regulation of the petitioner's teaching methods, as well as its sexual harassment policy which provides notice of prohibited conduct, "seek [] to address the legitimate pedagogical concern of providing a congenial academic environment," free from intimidation or hostility. *See Silva*, 888 F. Supp. at 313. As such, the policy and the sanction were reasonable. Under applicable case law,

> the propriety of regulations or sanctions must depend on such circumstances as the age and sophistication of the students, the closeness of the relation between the specific techniques used and the concededly valid educational objective, and the context and manner of presentation.

*Id.* (quoting *Mailloux v. Kiley*, 448 F.2d 1242, 1243 (1st Cir. 1971)).

In light of the above, and in spite of the fact that the petitioner's students are "presumed to have possessed the sophistication of adults," *id.*, the court finds that

6

SMCC's regulation of the petitioner's speech was reasonably related to a legitimate pedagogical concern. Accordingly, because the petitioner was on notice that his speech was prohibited and because SMCC's regulation of petitioner's speech was reasonably related to a legitimate pedagogical concern, the court concludes that the petitioner's free speech rights were not violated. *See Ward*, 996 F.2d at 452.

B.   Due Process

The petitioner also challenges SMCC's decision to terminate him because he was not given appropriate prior notice or an opportunity to be heard, thereby depriving him of a property interest – namely, his teaching position – without due process of law. The Fourteenth Amendment to the United States Constitution and Maine's Constitution, article I, section 6-A protect individuals from deprivations of life, liberty, or property by the State without due process of law. U.S. Const. amend. XIV § 1; Me. Const. art. I, § 6-A. The state and federal due process requirements are coextensive. *Fichter v. Bd. of Envtl. Prot.*, 604 A.2d 433, 436 (Me. 1992). "When protected interests are implicated, the right to some kind of prior hearing is paramount." *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). Therefore, "except in emergency situations due process requires that when a State seeks to terminate [a protected] interest . . . , it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination

7

becomes effective." *Id.* at 570, n.4 (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971)) (emphasis in original).

Whether the petitioner was due any process prior to his termination depends upon whether a protected property interest was implicated.[4] In considering the question, the court looks to the jurisprudence of the U.S. Supreme Court and, in particular, its analysis in *Roth*, which involved a claim by an associate professor that the summary refusal of a state university to renew his one-year appointment deprived him of a property interest without due process of law.

In *Roth*, the Court explained that "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Roth*, 408 U.S. at 576. In order for an individual "[t]o have a property interest in a benefit . . . [he] must have more than an abstract need or desire for it. [He must] have a legitimate claim of entitlement to it." *Id.* When determining whether an individual has a legitimate claim of entitlement to a benefit, a court must examine the source of the benefit itself. "[Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or

---

[4] Whether the petitioner's alleged expectation of continued employment amounted to a protected property interest also bears on the question of this court's jurisdiction to entertain this 80B appeal. *See Dowey v. Sanford Housing Authority*, 516 A.2d 957, 960-62 (Me. 1986) (explaining that "[w]hen as a matter of state law, one is employed at the will and pleasure of his employer, he or she has no property interest in continued employment that is entitled to constitutional protection," and, thus, no right to judicial review under Rule 80B of the termination decision) *Id.* at 961.

understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

Informed by the due process principles outlined in *Roth* and by the terms of the petitioner's prior employment engagements at SMCC, the court concludes that, even though the petitioner was an adjunct instructor, rather than a tenured professor, and despite the fact that he did not have a written employment contract, he had a reasonable expectation of continued employment amounting to a protected property interest. As the Court explained in *Roth*, the petitioner's "property" interest in his employment at SMCC "was created and defined by the terms of his appointment[, which] secured his interest in employment up to" the end of the 2003 fall semester. *Roth*, 408 U.S. at 577-578 (citing *Connell v. Higginbotham*, 403 U.S. 207, 208 (1971) for the proposition that due process principles "proscribing summary dismissal from public employment without hearing or inquiry . . . applied to a teacher recently hired without tenure or a formal contract, but nonetheless with a clearly implied promise of continued employment."). *Id.* at 577.

Because the petitioner had a legitimate expectation in his continued employment through the end of the fall semester, he was entitled to prior notice and some form of a hearing prior to his termination. *See Roth*, 408 U.S. at 569-70. The question is whether the respondents afforded him the process he was due.

Based on the record before the court, it is unclear to what extent petitioner was given notice prior to his termination. The only record evidence relating to this issue is the letter from SMCC's counsel, dated several weeks after the petitioner's termination, enumerating the circumstances leading up to and surrounding the termination. (*See* Rec. Tab # 9). Nothing in that letter indicates whether and to what extent the petitioner was given prior notice of the complaints lodged against him or the fact that his employment was at risk. *See id.* The record does, however, indicate that the petitioner was given an opportunity to respond, but does not indicate to what extent and in what way the petitioner was given that opportunity to discuss or defend his actions. *See id.*[5]

It is the petitioner's obligation to insure that "a complete record and detailed findings of fact and conclusions of law are available to this court for 'meaningful judicial review' of [governmental] action." *Pearson v. Town of Kennebunk*, 590 A.2d 535, 538 n.1 (Me. 1991) (citing *Harrington v. Inhabitants of Kennebunk*, 459 A.2d 557, 562 (Me. 1983)). "[A]n appealing party is ultimately responsible for producing an adequate record for judicial review." *Id.* (citing *Sanborn v. Town of Eliot*, 425 A.2d 629, 630-31 (Me. 1981)). Notwithstanding this responsibility,

---

[5] Mr. Langhauser's letter recites that "The College reviewed the events and found that the account provided by the students was not denied by Mr. Smith, who was offered the opportunity to present his side." *Id.*

however, it does not appear that a record sufficient for judicial review could have been produced by the petitioner in this case.[6]

Ordinarily, when the findings are not implicit in the agency's decision or are not otherwise apparent from the record, "the party aggrieved by the [] decision should request findings of fact and conclusions of law before asserting the insufficiency of findings as a ground for judicial review in an action brought pursuant to M.R. Civ. P. 80B." *Id.* Here, although the petitioner did ask for a written enumeration of the reasons for his termination and received a reply from SMCC's counsel, the counsel's letter was not a sufficient record of the college's findings. *See Carroll v. Town of Rockport*, 2003 ME 135, ¶ 28, 837 A.2d 148, 156.

The Law Court has explained that, "[w]hen confronted with an inadequate record, the Superior Court" may either vacate the decision appealed from and remand the case for a new hearing or it may retain jurisdiction and remand for further findings that permit meaningful judicial review. *See Sanborn*, 425 A.2d at 631. *See also Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶¶ 11-16, 769 A.2d 834, 838-39. This court concludes that the latter is more appropriate.

---

[6] The court is mindful that it previously denied the petitioner's efforts to supplement the record. *See Smith v. SMCC, et al.,* CUMSC-AP-03-62 (Me. Super. Ct., Cum. Cty., Jan. 31, 2005) (Humphrey, J.). However, none of the documents sought to be added would have rendered the record sufficient for judicial review of the process petitioner was afforded.

11

## DECISION

Based upon the foregoing, and pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Order on the Civil Docket by a notation incorporating it by reference and the entry is

> The Court retains jurisdiction of this matter and it is remanded to Respondent Southern Maine Community College for further findings consistent with this Decision and Order.

Dated: May 31, 2005

_____
Justice, Superior Court

12

Date Filed_10-08-2003_     Cumberland_     Docket No. _AP-03-62_

County

Action _80B Appeal_

ROBERT SMITH                  SOUTHERN MAINE COMMUNITY COLLEGE
                                     WILLIAM BERMAN
                                     JANET SORTOR

vs.

| Plaintiff's Attorney        (Co-Counsel) | Defendant's Attorney |
|---|---|
| Howard T. Reben, Esq.    Adrian Hansen, Esq.<br>Reben, Benjamin and March<br>97 India Street<br>P.O. Box 7060<br>Portland, ME   04112<br>(207) 874-4771<br>      GEOFFREY STONE, ESQ (pro hac vice) | Charles Harvey Esq.(all defendants)<br>Two City Center<br>P.O. Box 126<br>Portland, Maine 04112-0126<br>(207) 775-1300 |

| Date of Entry | |
|---|---|
| **2003** | |
| Oct. 9<br>"<br>" | Received 10-08-03.<br>Summary Sheet filed.<br>80B Appeal filed. |
| Oct. 10 | On 10-10-03.<br>Briefing schedule mailed. Plaintiff's brief and record due 11-17-03. |
| Oct 24<br><br>"  " | Received 10-24-03:<br>Plaintiffs Motion to Amend Complaint with Incorporated Memorandum of Law, filed.<br>On 10-24-03:<br>Plaintiffs Motion Granted. (Warren, J.)<br>Copy mailed to Howard Reben, Esq.. |
| Nov. 5<br>" | Received 11-05-03.<br>Acceptance of Service upon Defendants Southern Maine Community College to William Berman and Janet Sorter on 10-08-03 filed. |
| Nov. 12 | Recevied 11-12-03.<br>Entry of Appearance of Charles Harvey, Esq., on behalf of Defendants Southern Maine Community College, William Berman and Janet Sortor filed. |
| Nov 17<br><br>"  " | Received 11-15-03:<br>Plaintiffs Motion for Enlargement of Time filed.<br>Entry of Appearance of Adrienne Hansen, Esq as Co-Counsel for Plaintiff. |
| Nov. 21 | On 11-18-03:<br>As to Plaintiffs' Motion for Enlargement of Time: Plaintiff's Motion for Enlargement of Time is hereby GRANTED. Plaintiff shall be afforded an additional twenty-one (21) days in which to file his 80B Brief and Supporting Record. The Brief and Record are now due on Monday, December 8, 2003. (Warren, J.).<br>On 11-21-03 copies mailed to Charles Harvey, Esq. and Howard Reben, Esq. |

STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2007 FEB -6 A 9: 36 TER  CUM - O '-- 5 ...

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-62

ROBERT SMITH,

     Petitioner

v.

SOUTHERN MAINE COMM
COMMUNITY COLLEGE, ET AL.,

     Respondents

DECISION AND ORDER
AFTER REMAND

DONALD L. GARBRECHT
LAW LIBRARY

MAY 15 2007

This matter is before the court, after remand, on petitioner Robert

Smith's ("Petitioner") Rule 80B appeal of his termination from employment

by respondent Southern Maine Community College ("SMCC"). Also before

the court is the motion of each party to strike the other's affidavit submitted

in purported compliance with the court's earlier remand order.

## BACKGROUND

Petitioner claimed that he was terminated from his employment in

violation of his freedom of speech and due process rights under the Maine

and Federal Constitutions. When the court first considered the merits of

Petitioner's appeal, his free speech argument was rejected. However, the

court found that Petitioner had established a reasonable expectation of

continued employment that amounted to a protected property interest to

1

which due process protections were applicable. Then, turning to the question of whether Petitioner had been given the process due him, the court concluded that the record on that issue was inadequate and the case was remanded for further findings regarding the process afforded Petitioner. In ordering the remand, this court determined that, even though it was Petitioner's burden to produce a record sufficient for judicial review, he could not do so with respect to the due process issue. Subsequently, each party submitted an affidavit purportedly directed to the "findings" requirement of the remand order.

The court now concludes after further review that the case should not have been remanded. More specifically, it is clear that Petitioner failed to meet his obligation to produce a record sufficient for judicial review of the due process issue, and the court's prior determination that Petitioner could not have done so was erroneous. Petitioner never requested a trial of the facts on this issue, as he could have done pursuant to M.R. Civ. P. 80B(d), and the court's remand order was tantamount to asking SMCC to create a factual record that had not existed at the time of the appeal.[1]

---

[1] Although Petitioner did not seek a trial of the facts to introduce evidence regarding the due process issue, he did file a motion to join his 80B appeal with independent claims for constitutional violations (42 U.S.C. § 1983), defamation, intentional misrepresentation, and breach of contract. The court denied the motion, as untimely, and dismissed those independent claims.

2

As the court noted in its prior decision, when necessary findings are not implicit in the agency's decision or are not otherwise apparent from the record, "the party aggrieved by the [] decision should request findings of fact and conclusions of law before asserting the insufficiency of findings as a ground for judicial review in an action brought pursuant to M.R. Civ. P. 80B." *Id.* Petitioner did ask for a written enumeration of the *reasons for his termination* and received a reply from SMCC's counsel. *See* Letter of Attorney Langhauser at Rec. Tab 9[2] However, he did not ask for or provide to the court evidence regarding the sufficiency of either the school's notice to him or his opportunity to be heard. We only know from the existing record — counsel's letter — that he had an opportunity to be heard and, from that, we may reasonably conclude that he had prior notice. Stated another way, it is reasonably implicit from the record evidence of Petitioner's opportunity to respond that he had some prior notice of the place where and the time when the opportunity was to be given.

Based upon the foregoing, the court concludes that it should not have remanded the case and that the decision of SMCC should be affirmed.

---

[2] Mr. Langhauser's letter recites that "The College reviewed the events and found that the account provided by the students was not denied by Mr. Smith, who was offered the opportunity to present his side." *Id.*

After remand, SMCC submitted the affidavit of Janet M. Sorter, Ed.D., Vice President and Dean of Academic Affairs of SMCC, describing the procedure afforded to Petitioner prior to his termination, and Petitioner submitted his own affidavit.[3] Neither affidavit constitutes "findings".[4] Even if they did, they do not of themselves establish that Petitioner was given—or not given—the process due him. They only establish that *some process* was accorded Petitioner. He was called into a meeting with the Dean of Academic Affairs and the Dean of Students, he was informed of the complaints against him, and he was given an opportunity to respond prior to being discharged.

Decisions of the United States Supreme Court discussing the process due to government employees in connection with their employment right establish, first, that governments have broad powers in the selection and discharge of their employees and, second, that the scope of any right to continued employment asserted by a government employee is defined by existing law, rules and standards securing the employment right. *See Arnett v. Kennedy*, 416 U.S. 134, 151 (1974); *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Slochower v. Board of Higher Education of New York City*,

---

[3] Petitioner's affidavit offers a competing version of the process he was given by SMCC. Petitioner would only properly have been able to present the material in this affidavit in a trial of the facts, which he did not request.

[4] In this connection, the Court grants each party's motion to strike the other's affidavit.

4

350 U.S. 551, 559 (1956). The only principle that government employment rules and legislation must honor in every instance is that *some process*, including, minimally, an inquiry on the part of the government and a hearing providing the employee an opportunity to defend himself, must be given. *See Roth*, 408 U.S. at 577, *Slochower*, 350 U.S. at 559. SMCC met this minimum constitutional standard with the process it provided Petitioner. *See id.* What Petitioner has failed to establish is that this process violated any applicable law or SMCC's own rules regarding the termination of its employees.

SMCC is a part of the Maine Technical College System, governed by 20-A M.R.S.A. §§ 12701 et seq. 20-A M.R.S.A. Section 12712(5) establishes that the presidents of the colleges governed by this statute have the responsibility to evaluate the performance of the faculty and staff of the colleges under policies and standards developed by the board of trustees. This is apparently the only statutory authority in Maine governing SMCC's actions with regard to Petitioner. Petitioner has not shown how, if at all, this or any other statutory authority has been violated by SMCC.

Turning to the impact of any applicable school rules, according to the SMCC Faculty Resource Handbook, disciplinary action to be taken against an employee of SMCC must utilize procedures established by the applicable

5

collective bargaining agreement. *See* Rec. Tab 4, unpaginated. However, the applicable agreement is not part of the record in this case. Therefore, the court cannot determine whether SMCC's treatment of Petitioner does or does not meet the requirements of the agreement. Accordingly, Petitioner has failed to meet his burden of establishing that he was not given the process due him. To be clear, the Court's earlier charge on remand to SMCC to supplement the record should not be misconstrued as placing any burden on SMCC to provide the collective bargaining agreement. Petitioner, as the moving party in this 80B appeal, had the burden of preparing and submitting the record for review. M.R. Civ. P. 80B(e).

## DECISION

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order After Remand on the Civil Docket by a notation incorporating it by reference and the entry is

> The Decision of Southern Maine Community College to terminate Petitioner's employment is AFFIRMED.

Date: February 5, 2007

_____
Justice, Superior Court

6

Date Filed 10-08-2003    Cumberland    Docket No. AP-03-62
                          County

Action _ 80B Appeal

ROBERT SMITH                    SOUTHERN MAINE COMMUNITY COLLEGE
                                WILLIAM BERMAN
                                JANET SORTOR

                                    vs.

| Plaintiff's Attorney          (Co-Counsel) | Defendant's Attorney |
|---|---|
| Howard T. Reben, Esq.   Adrian Hansen, Esq. | Charles Harvey Esq.(all defendants) |
| Reben, Benjamin and March | Two City Center |
| 97 India Street | P.O. Box 126 |
| P.O. Box 7060 | Portland, Maine 04112-0126 |
| Portland, ME   04112 | (207) 775-1300 |
| (207) 874-4771 | |
|     GEOFFREY STONE, ESQ (pro hac vice) | |

Date of
Entry